**COMMONWEALTH OF PUERTO RICO**
**COURT OF FIRST INSTANCE**
**SUPERIOR COURT, CAGUAS PART**

| | |
|---|---|
| **FAUSTINO XAVIER BETANCOURT COLON** | **CIVIL CASE NO.:** |
| **Petitioner** | |
| **v.** | **SUBJECT:** **PETITION FOR ODER** |
| **HOSPITAL MENONITA CAGUAS, INC., JOHN DOES 1-100** | |
| **Respondents** | |

**PETITION FOR ORDER OF PERMANENT INJUNCTION**
*(not requesting preliminary injunction)*

**TO THE HONORABLE COURT:**

Comes now the petitioner, Faustino Xavier Betancourt Colón (hereinafter the "Petitioner" or "Betancourt Colón"), through the undersigned legal counsel, and requests a permanent injunction pursuant to 42 U.S.C. § 12188 due to the failure by Hospital Menonita Caguas, Inc. (hereinafter the "Respondent") to comply with the provisions of Title III of the Americans with Disabilities Act, 42 U.S.C. § 12181 et seq. (hereinafter the "ADA"). [1]

---

[1] The obligations of Title III of the ADA extend to all private entities and commercial facilities that provide services to the public. The obligation imposed by Title III consists of not discriminating in the offering of said services against persons with disabilities in the equal and full enjoyment of the goods, services and facilities, privileges, advantages, or accommodations in any place of public accommodation. The official link provided by the U.S. Government with information about Title II/III of the ADA is: http://www.ada.gov/

[CERTIFIED TRANSLATION]
Case 3:21-cv-01224-SCC   Document 1-1   Filed 05/13/21   Page 2 of 29
CG2021CV00863 04/12/2021 12:57:01 pm Entry No. 1 Page 2 of 28

## THE PLACE OF PUBLIC ACCOMMODATION AT ISSUE

1.   This action seeks to remedy the unlawful discrimination that is takin place in an established and known place of **public accommodation** [2] in the location that is mentioned below:

HOSPITAL MENONITA DE CAGUAS
CARRETERA 172  BO TURBACO
CAGUAS, PUERTO RICO PR 00725
LOT: 225-083-524-05
COORDINATES: 18.22011234146754, -66.0495750854911

(We will hereinafter refer to this place as the "Property" or the "place of public accommodation").

## NEED FOR THIS ACTION

2.   This Petition for Permanent Injunction is necessary for the following reasons:

a)  The Respondent did not procure the elimination of architectural barriers;

b)  The Respondents have architectural barriers in the place of public accommodation in violation of the ADA and the Accessible Design Guidelines established by the U.S. Department of Justice, which may be accessed through the following official link:

https://www.ada.gov/2010ADAstandards_index.htm

---

[2] The term "public accommodation" or "place of public accommodation", 42 U.S.C. 12181(7), is defined as any private entity the operations of which affect commerce, and the following places are specifically mentioned as examples of places of public accommodation: hotels, motels, inns, restaurants, bars, other establishments serving food or drinks, motion picture houses, theaters, concert halls, stadiums, places of exhibition or entertainment, auditoriums, convention centers, lecture halls, places of public gathering, bakeries, grocery stores, clothing stores, hardware stores, shopping centers, other sales or rental establishments, laundromats, dry-cleaners, banks, barber shops, beauty shops, travel services, shoe repair services, funeral parlors, gas stations, offices of accountants or lawyers, pharmacies, insurance offices, professional offices of health care providers, hospitals, other service establishments, public transportation terminals, museums, libraries, galleries, other places of public display or collection, parks, zoos, amusement parks, other places of recreation, nursery schools, elementary, secondary, graduate or postgraduate private schools, universities, other places of education, day care centers, senior citizen centers, homeless shelters, food banks, adoption agencies, other social service center establishments, gymnasiums, health spas, bowling alleys, golf courses, and other places of exercise or recreation.

[CERTIFIED TRANSLATION]
Case 3:21-cv-01224-SCC   Document 1-1   Filed 05/13/21   Page 3 of 29
CG2021CV00863 04/12/2021 12:57:01 pm Entry No. 1 Page 3 of 28

c) The Petitioner visited the place of public accommodation and personally encountered architectural barriers related to his disability.

d) The Petitioner (i) is at imminent risk of encountering the architectural barriers and (ii) it would be futile for him to return to the place of public accommodation at this time, since it would entail a risk to his personal safety or would be equivalent to submitting himself to an unpleasant, humiliating, and discriminatory condition or situation.

e) The Petitioner's intention at this time is to be able to enjoy the goods, privileges, [and] services that are available at the place of public accommodation once all of the architectural barriers are completely removed. However, the Petitioner reserves the right to return to the place of public accommodation at any time before the architectural barriers are removed, even if it might entail submitting himself to dangerous or discriminatory conditions, in order to seek out, identify, and denounce the discrimination.

### THE PETITIONER

3.      The Petitioner is a person with a physical or mental disability that substantially limits several of his main daily activities. His physical disability consists of: cardiac failure (congestive heart failure, 20% heart function), hydrocephaly, foot abnormalities, obesity. These conditions or impairments, all of them together and each of them individually, substantially limit the Petitioner (compared to the majority of the population) from carrying out the following main daily activities: walking, standing, lifting objects, bending, among others. By way of example, cardiac failure causes foot swelling (due to the accumulation of fluids), which results in limited mobility. Cardiac failure causes breathing problems, which results in a substantially limited walking capacity. Foot deformities cause substantial mobility

[CERTIFIED TRANSLATION]
Case 3:21-cv-01224-SCC  Document 1-1  Filed 05/13/21  Page 4 of 29
CG2021CV00863 04/12/2021 12:57:01 pm Entry No. 1 Page 4 of 28

limitations. Hydrocephaly causes a frequent need to urinate and limits the ability to walk and maintain balance. Obesity, for its part, is not a mere physical characteristic in the plaintiff's case, but rather a medical and measurable condition that is, in itself, a disability, since it substantially limits the ability to move. Alternatively, it is alleged that obesity is a disability inasmuch as it has an underlying cause, to wit: cardiac failure, hydrocephaly, and congenital foot deformity. The plaintiff has an extensive medical record pertaining to the aforementioned conditions. Mr. Betancourt Colón is registered with the Puerto Rico Department of Health as a person with disabilities (ID No. B-201009500). Also, he was issued what is commonly known as a permanent "disabled ID", which is essentially a special sign issued by the Department of Transportation and Public Works of the Commonwealth of Puerto Rico allowing Mr. Faustino Colón to be able to legally park in spaces designated as accessible ("for persons with disabilities"). Mr. Faustino Colón also owns and frequently uses a mobility scooter, which is equivalent to a wheelchair. His mailing and home address is: RES LOS LIRIOS APT. 34, 11 CALLE TERESA JORNET, EDIFICIO 12, APT 34, SAN JUAN (CUPEY), PR 00926-7561. HIS TELEPHONE NUMBER IS: (787) 348-7280.

4.      The Petitioner has a disability as defined by the ADA. 42 U.S.C. § 12102(1)(A).

5.      As mentioned before, the Department of Transportation and Public Works of the Government of Puerto Rico (DTOP, Spanish acronym) has issued the Petitioner a removable sign indicating that he is a disabled person, so that the Petitioner may use it to park in parking spaces that have been identified as accessible or "for persons with disabilities", with number 1124023. The removable sign is not required to be used in a specific vehicle and it does not have to be used in a motor vehicle registered to the Petitioner's name. The Petitioner has the right to use the removable sign issued

[CERTIFIED TRANSLATION]
Case 3:21-cv-01224-SCC  Document 1-1  Filed 05/13/21  Page 5 of 29
CG2021CV00863 04/12/2021 12:57:01 pm Entry No. 1 Page 5 of 28

by the DTOP in any vehicle, whether the vehicle belongs to him, a family member, or a friend, or in a vehicle in which he simply happens to be riding. The Petitioner has the legal right to use parking spaces designated as accessible or "for persons with disabilities" in this jurisdiction, regardless of the motor vehicle in which he is traveling.

## THE RESPONDENTS

6.    The Respondents are the following natural persons or legal entities:

    i.    Hospital Menonita Caguas, Inc. This legal entity is the owner, lessor, lessee, or operator of the Property that is identified in the first paragraph of this Petition.

    ii.    John Does 1-100. These unknown natural persons or legal entities are the owners, lessors, lessees, and operators of the Property that is identified in the first paragraph of this Petition. Since their identity is unknown at this time, the Petition will be amended to include them in this civil suit. In this Petition, the term "Petitioner" [sic] also includes all the unknown respondents identified with the fictitious name "John Does 1-100".

## JURISDICTION AND COMPETENCE

9. [sic] In the event that this civil suit were removed to the United States District Court strictly following the applicable procedural requirements, in rem jurisdiction is invoked pursuant to 28 U.S.C. §§ 1331 and 1343 (a)(3) and (a)(4) for violations of the ADA.

10.  The Court of First Instance has original jurisdiction to hear and rule on controversies that arise under Title III of the Americans with Disabilities Act, 42 U.S.C.  § 12181 et seq.

[CERTIFIED TRANSLATION]
Case 3:21-cv-01224-SCC   Document 1-1   Filed 05/13/21   Page 6 of 29
CG2021CV00863 04/12/2021 12:57:01 pm Entry No. 1 Page 6 of 28

11.  This civil action has been filed before the judicial forum with competence, inasmuch as the Property in controversy is located in this judicial region.

## FACTS

12.  The Property is a place of public accommodation, as defined by the ADA, 42 U.S.C.  12181(7) and it is a place that is open to the public, the operation of which affects commerce. The Property is not residential in nature, it is not a private club, and it is not a church.

13.  The Petitioner is a resident of Puerto Rico and lives a very short distance by motor vehicle from the Property. Specifically, he lives about 16 or 18 minutes or 9 or 11 miles away, depending on which route he takes.

14.  The Petitioner visited the Property on or around February 12, 2021, and found barriers that interfered with his ability to use and enjoy the goods, services, privileges, and accommodations offered at the Property.

15.  Additionally, and separately from the above, the Petitioner invokes standing as a person who intends to return to the Property expressly to seek out and identify any architectural barriers existing in the Property in the future. He intends to seek out and identify any architectural barriers in order to: (1) denounce additional barriers that may be found in the future; (2) check for compliance with or violations of any order that the court may issue regarding the elimination of architectural barriers. It is affirmatively alleged that [the Petitioner has] standing as a civil rights tester, as alleged in this paragraph, in accordance with the binding precedent in this jurisdiction established in Suarez-Torres v. Panadería y Repostería España, Inc., No. 18-1618 (1st Cir. Feb. 17, 2021), where it was established that it is not necessary for a person with disabilities to be a "bona fide client or customer" of the place of public accommodation to have standing to claim rights under the ADA. A civil rights tester is a person who has the specific intention to seek out, identify, and denounce

discrimination, even if it entails submitting to said discrimination or to unsafe conditions. In <u>Suarez-Torres v. Panadería y Repostería España, Inc.</u>, the First Circuit unequivocally established the existence of standing as a tester by ruling that:

> Panaderia España contends that, as testers, appellants are unable to establish an injury because their only motivation in visiting the bakery was to detect ADA violations.
>
> We have not previously addressed the impact of a plaintiff's status as a "tester" on her ability to establish standing under the ADA. However, the circuits that have considered this issue have uniformly concluded that an individual's "tester" status does not defeat standing. As the Eleventh Circuit explained in Houston v. Marod Supermarkets, Inc., the ADA guarantees the right of any individual to be free from "disability discrimination in the enjoyment of [public places of accommodation] regardless of [the individual's] motive for visiting the facility." 733 F.3d at 1332. Congress did not limit the protections of the ADA to "clients or customers" or otherwise impose a bona fide visitor requirement. Id. at 1332-34 (contrasting 42 U.S.C. §§ 3604(a), and 12182(b)(1)(A)(iv), which do contain such requirements). Hence, such limitations should not be read into the ADA. Id. We agree with this analysis. **Accordingly, we conclude that appellants' status as testers does not defeat standing.**

<u>Suarez-Torres v. Panadería y Repostería España, Inc.</u>, No. 18-1618 (1st Cir. Feb. 17, 2021) (internal citations omitted)(emphasis ours).

16.  In his capacity as a bona fide customer, the Petitioner has felt, and to this day continues to feel, dissuaded or discouraged from visiting the Property because he is aware that there are unlawful barriers that limit and interfere with his access to the same. The Petitioner knows that it would be useless to face these barriers because facing them implies submitting himself to a humiliating, discriminatory, and dangerous situation. All the barriers described herein are directly related to the Petitioner's disability and interfere with his full and equal access. However, despite feeling dissuaded, he intends to return in order to seek out, identify, and denounce the discrimination that exists at said Property.

[CERTIFIED TRANSLATION]
Case 3:21-cv-01224-SCC   Document 1-1   Filed 05/13/21   Page 8 of 29
CG2021CV00863 04/12/2021 12:57:01 pm Entry No. 1 Page 8 of 28

17.   Based on his personal observations, and based on his experience as a person with limitations who has seen hundreds of accessible and inaccessible places throughout his lifetime, the Petitioner affirmatively alleges that the following architectural *design* barriers related to his disability and mobility limitations are in place at the Property:

### Access from Outside the Property:
### Parking, Access Route, and Entrance

a)   Regarding the access route, there is no access route from the parking spaces or the sidewalk to an accessible entrance without steps. ADAAG 1991 § 4.3; ADAAG 2010 § 206.2.1. Possible solutions: add a ramp that complies with current standards.

b)   The accessible parking spaces are not located in the closest accessible route to the accessible entrance. ADAAG 2010 § 502.6. Possible solution: reconfiguring the parking spaces.



c)   The parking spaces that were visited are poorly set up because part of the parking space is on the public sidewalk, thus the parking space is not properly located or configured. ADAAG 2010 § 502.6.

[CERTIFIED TRANSLATION]
Case 3:21-cv-01224-SCC  Document 1-1  Filed 05/13/21  Page 9 of 29
CG2021CV00863 04/12/2021 12:57:01 pm Entry No. 1 Page 9 of 28

d)   The parking lot does not receive proper maintenance in order to be kept in "operable condition", in violation of 28 C.F.R. § 36.211(a). For example, the parking area has been maintained poorly and inconsistently, and not in compliance with the applicable standards.

e)   The access route from the parking lot to the entrance of the public accommodation has steps instead of ramps, which is substantially inconsistent with and inaccessible to persons with limitations or disabilities, in violation of the requirements of the applicable standards. ADAAG 1991 §§ 4.7.1, 4.7.2, 4.7.2.3, 4.7.4, 4.7.5, 4.7.6, 4.7.9, 4.7.10; ADAAG 2010 §§ 402.2, 406.1, 405.2, 406.1, 405.3, 405.5, 406.4, 406.3. Possible solutions: Implementing an accessible route in keeping with the regulatory requirements.



**Access Inside the Property: Access to Goods and Services**

f)   There are service and sales counters, but their configuration and dimensions are substantially inconsistent with the applicable standards. ADAAG 1991 § 7.2 ADAAG 2010 §§ 904.3.1, because the counters in all the areas are high (requiring that a portion of the counter measure 36" high by 36" wide), 904.4

[CERTIFIED TRANSLATION]
Case 3:21-cv-01224-SCC   Document 1-1   Filed 05/13/21   Page 10 of 29
CG2021CV00863 04/12/2021 12:57:01 pm Entry No. 1 Page 10 of 28

(requiring that the accessible part of the counter be as deep as the non-accessible part of same), 904.4, 904.1 (requiring a minimum amount of space for parallel or horizontal approach), 306.2.2, 306.2.4, 306.3.1 (requiring a space under the counter when the counter is designed for frontal approach). Possible solutions: lowering a section of the counter; expanding a section of the counter; replacing the counter; expanding the depth of the counter; reconfiguring spaces to allow for parallel or frontal approach; reconfiguring the counter to provide the required space under the counter in cases of frontal approach design.

g) There are counters set up for people to reach materials, objects, or goods that are available to everyone on a self-service basis, but said materials, objects, or goods are out of reach, since they are placed at more than 48" from the ground and the counter is substantially incompatible with the requirements of the applicable standards. ADAAG 2010 ADAAG 2010 §§ 904.5.1, 308.3.1, 308.3.1 [sic], 308.3.2, 308.2.1, 904.5.1, 904.5.1, 904.5.2. Possible solutions: placing the items elsewhere, replacing the counter, or lowering the height of the counter.

h) There is a waiting area for people to sit down, but there is no designated space for persons with disabilities—and, in this case, the Plaintiff, due to his physical condition, necessarily requires a wheelchair—to properly position themselves, which is substantially inconsistent with the applicable standards. ADAAG 2010 §§ 802.1.2, 802.1.3. Possible solutions: eliminating some seats to make space to accommodate persons with disabilities; expanding the sitting area.

i) Regarding the toilet area in the restrooms, the space provided around the toilets is substantially inconsistent with the applicable standards. ADAAG

10

[CERTIFIED TRANSLATION]
Case 3:21-cv-01224-SCC   Document 1-1   Filed 05/13/21   Page 11 of 29
CG2021CV00863 04/12/2021 12:57:01 pm Entry No. 1 Page 11 of 28

1991 § 4.22; ADAAG 2010 § 604.3.1, 604.8.1.1. Possible solutions: expanding the restrooms; moving objects to make space.

18. Based on his personal observations, and based on his experience as a person with limitations who has seen hundreds of accessible and inaccessible places throughout his lifetime, the Petitioner affirmatively alleges that the following barriers linked to discriminatory *policies* related to the use of the designs and the operation of Panadería España [sic] are in place at the Property.

    i    The Respondents have a policy and practice of serving persons who use a chair at high counters. This situation does not allow the Petitioner to have "full and equal enjoyment" of the access that is available to persons without disabilities. 42 U.S.C. § 12182(a). This situation causes the Petitioner to have an experience that is not the functional equivalent of the experience enjoyed by persons without disabilities who visit the place. 42 U.S.C. § 12182(b)(1)(A)(ii).

    ii.    The Respondents have a policy and practice of serving persons who use a chair at counters with the legally required height. This situation does not allow the Petitioner to have "full and equal enjoyment" of the access that is available to persons without disabilities. 42 U.S.C. § 12182(a). This situation causes the Petitioner to have an experience that is not the functional equivalent of the experience enjoyed by persons without disabilities who visit the place. 42 U.S.C. § 12182(b)(1)(A)(ii).

    iii.    The Respondent has a policy and practice of placing the chairs in the waiting room too close together. This situation does not allow the Petitioner to have "full and equal enjoyment" of the access that is available to persons without disabilities. 42 U.S.C. § 12182(a). This

[CERTIFIED TRANSLATION]
Case 3:21-cv-01224-SCC   Document 1-1   Filed 05/13/21   Page 12 of 29
CG2021CV00863 04/12/2021 12:57:01 pm Entry No. 1 Page 12 of 28

situation causes the Petitioner to have an experience that is not the functional equivalent of the experience enjoyed by persons without disabilities who visit the place, since there are tables that he cannot use in an integrated environment. 42 U.S.C. § 12182(b)(1)(A)(ii). <u>Olmstead v. L.C. ex rel. Zimring</u>, 527 U.S. 581, 592, 119 S. Ct. 2176, 144 L.Ed.2d 540 (1999) (it is mentioned that goods and services must be provided in "a setting that enables individuals with disabilities to interact with non-disabled persons to the fullest extent possible."). The most accessible tables are not configured so as to be integrated with the rest of the areas and arranged by area type. Additionally, the most accessible tables are too close to other tables, making it hard for a wheelchair or an electric mobility vehicle to fit.

19.  The barriers identified in the two previous paragraphs are only those that the Petitioner is personally aware of based on his experience and common sense as a person with disabilities, not based on scientific or expert evidence. All of the barriers in the Property, including those that were found and others that have yet to be found as of this time, are the cause of the Petitioner's legal damages; that is, the lack of full, free, and spontaneous access to the Property. Thus, it is the intention of the Petitioner to use discovery mechanisms to seek out, identify, and point out all architectural barriers related to the Petitioner's disability, so that there may be full and equal access to the Property. After identifying the barriers, the Petitioner intends to ask the Court to amend the allegations in order to adapt them to the discovered evidence related to the ADAAG violations that are yet unknown, in keeping with the holding of the First Circuit in <u>Suarez-Torres v. Panadería y Repostería España, Inc.</u>, *supra* ("several circuits  have held that an ADA plaintiff  who has filed  suit after encountering a

[CERTIFIED TRANSLATION]
Case 3:21-cv-01224-SCC   Document 1-1   Filed 05/13/21   Page 13 of 29
CG2021CV00863 04/12/2021 12:57:01 pm Entry No. 1 Page 13 of 28

barrier in a place of public accommodation may challenge all other barriers on that property related to her disability, including those of which she was unaware when she initially filed her complaint.").

20. The Petitioner has been discouraged, and currently feels discouraged, from visiting the Property because he knows that he cannot access the goods, services, accommodations, privileges, advantages, and facilities of the Property without submitting himself to discrimination once again. The Petitioner is aware of the goods and services offered at the Property and will return to the Property once the barriers are eliminated.

21. The Respondents knew, or should have known, that the Property was and is inaccessible; that the conditions of the Property violate federal law and interfere with (or deny) access by persons with disabilities. Additionally, the Respondents have the financial resources to eliminate these barriers from the Property (without much difficulty or expense), and to make the Property accessible to the Petitioner. To date, however, the Respondents refuse to eliminate said barriers.

22. The Respondents have had and enjoyed enough control and authority to modify the Property to eliminate barriers and comply with the applicable federal standards. The Respondents have not eliminated said barriers and have not modified the Property to comply with the applicable accessibility standards. The Respondents have intentionally kept the Property in its current state and intentionally refrained from altering the Property for it to comply with the accessibility standards.

23. The Petitioner affirmatively alleges that the continuous presence of tangible and intangible barriers at the Property is so obvious and open that it reflects the discriminatory intent of the Respondents. The nature of the deviations from the federal standards does not suggest a failure to comply with the regulations due to

[CERTIFIED TRANSLATION]
Case 3:21-cv-01224-SCC   Document 1-1   Filed 05/13/21   Page 14 of 29
CG2021CV00863 04/12/2021 12:57:01 pm Entry No. 1 Page 14 of 28

mere negligence or human error. The existing noncompliance is so substantial that it is obvious to a casual observer of average intelligence with no expertise regarding the accessible design standards or without experience with architectural barriers because he or she does not have a disability. This is why the Petitioner believes, and therefore affirmatively alleges, that the discriminatory intention includes a conscious and pondered refusal to adhere to relevant construction standards; contempt towards the construction plans and permits issued for the Property; a conscious decision to maintain the architectural design (as it currently stands) at the Property, [and] the decision to not eliminate the architectural barriers [and] to keep the Property in a state of noncompliance driven by profit. It is affirmatively alleged that the Petitioner [sic] has sought to engage in unfair competition with its competitors by not investing money in complying with the federal mandate, even though its competitors have to invest in compliance, which affects other financial factors. The architectural barriers at the Property are not isolated (or temporary) interruptions in access due to maintenance or repair work.

24.  Based on the Respondents' noncompliance with the ADAAG, the Petitioner believes, and therefore alleges, that the Respondents have no internal policies, procedures, or documents related to efforts to ensure compliance with the ADA at the Property.

## CAUSE OF ACTION
### Americans with Disabilities Act of 1990

25.  The Petitioner herein incorporates the allegations contained in the preceding paragraphs.

26.  Title III of the ADA essentially provides that no individual shall be treated unequally for reason of disability in the full and equal enjoyment (or use) of goods, services, facilities, privileges, and accommodations offered by any person who is an

[CERTIFIED TRANSLATION]
Case 3:21-cv-01224-SCC   Document 1-1   Filed 05/13/21   Page 15 of 29
CG2021CV00863 04/12/2021 12:57:01 pm Entry No. 1 Page 15 of 28

owner, lessor, lessee, or operator of a place of public accommodation. 42 U.S.C. § 12182 (a).

27.   The Respondents discriminated against the Petitioner by denying him the full and equal enjoyment of and access to the goods, services, privileges, and accommodations of the Property during each visit and each time that the Petitioner decided not to visit the place.

28.   The ADA sets forth different standards depending on when the physical structure was built and whether the facility has been altered since January 26, 1992. 28 CFR §§ 36.401, 36.402. Properties "existing" prior to January 26, 1992, must eliminate barriers that prevent access by persons with disabilities when the elimination of same is "readily achievable". 42 U.S.C. § 12182 (b) (2) (A) (iv); 28 CFR § 36.304. Structures designed and built to be occupied for the first time after January 26, 1993 must be accessible to persons with disabilities, unless the entity is able to show that it is "structurally impracticable". 42 USC § 12183 (a). Finally, alterations after January 26, 1992, must be made to ensure that, to the "maximum extent feasible", the altered portions of the facilities are accessible. 28 CFR § 36.402 (a) (1).

29.   The design standards, ADAAG, were first published in 1991 and are codified in 28 CFR Part 36, Appendix A (1991 ADAAG). The most recent ADA design standards were first published in 2010 and codified in 28 CFR Part 36, Subpart D (2010 ADAAG). Both standards can be found at www.ada.gov. All new constructions and modifications begun on or after March 15, 2012, must comply with the 2010 ADAAG.

30.   The Petitioner believes that the Property was designed to be occupied for the first time after January 26, 1993. See 28 CFR § 36.401.

[CERTIFIED TRANSLATION]
Case 3:21-cv-01224-SCC    Document 1-1    Filed 05/13/21    Page 16 of 29
CG2021CV00863 04/12/2021 12:57:01 pm Entry No. 1 Page 16 of 28

31.   The Petitioner believes that the Property is located in a place that was built after January 26, 1993. See 28 CFR § 36.401.

32.   The Petitioner believes that the Property was "altered" after January 26, 1993. The term "altered" or "alterations" includes, but is not limited to, remodeling, renovation, rehabilitation, historic restoration, changes or rearrangement of structural parts or elements, changes or rearrangement of the configuration of walls and changes in the counters, tables, or objects inside the Property.

33.   Alternatively, if the Property was not designed and built to be occupied for the first time after January 26, 1993, the Property is deemed an existing facility, in which case there is an obligation to eliminate architectural barriers that affect persons with disabilities to the extent that the elimination of said barriers is "readily achievable". 42 USC § 12182 (b) (2). The ADA establishes that, when evaluating whether the elimination of barriers is "readily achievable", the factors to be considered include the "resources of the facility", 42 USC § 12181 (9) (b), which include "the overall financial resources of any parent corporation or entity", 28 CFR § 36.104. If the Respondents allege a lack of financial resources as an affirmative defense to excuse their noncompliance, the Petitioner does not accept said pretexts and intends to use discovery mechanisms in accordance with 28 C.F.R. § 36.104. § 36.104.

## FAILURE TO ELIMINATE BARRIERS IN AN EXISTING FACILITY

34.   The ADA specifically prohibits not eliminating the architectural barriers in existing facilities when such elimination is readily achievable. 42 USC § 12182 (b) (2) (A) (iv); 28 C.F.R. § 36.104.

35.   When an entity is able to demonstrate that the elimination of a barrier cannot be readily achieved, said entity must make sure that the goods, services, privileges, and accommodations are made available through alternative mechanisms, if said methods are readily achievable.  § 12182 (b) (2) (A) (v).

[CERTIFIED TRANSLATION]
Case 3:21-cv-01224-SCC   Document 1-1   Filed 05/13/21   Page 17 of 29
CG2021CV00863 04/12/2021 12:57:01 pm Entry No. 1 Page 17 of 28

36.  In this regard, the Petitioner hereby alleges that the Respondents can readily eliminate the architectural barriers in the Property without much difficulty or expense, and that the Respondents violate the ADA by failing to eliminate said barriers when they could and can readily do so.

37.  Alternatively, if it is not "readily achievable" for the Respondents to eliminate the architectural barriers, the Respondents violated the ADA by failing to make their services available through alternative methods that were readily achievable.

## FAILURE TO DESIGN AND BUILD
## AN ACCESSIBLE FACILITY

38.  The Property was designed and built (or both) after January 26, 1992—activating the accessibility requirements of Title III of the ADA and the regulations established by the U.S. Department of Justice.

39.  The Respondents violated the ADA by designing and building (or both) the Property in a way that was not easily accessible to the public with physical disabilities, including the Petitioner, when doing so was structurally practical.

## FAILURE TO MAKE AN ALTERED FACILITY ACCESSIBLE

40.  The Petitioner believes, and therefore affirmatively alleges, that the Property has been altered (as the term "alteration" is defined by §§ 202.1, 202.3, 202.4) after January 26, 1992. 28 CFR §36.403; 49 CFR §37.43.

41.  The ADA also requires that facilities be altered to be easily accessible to persons with disabilities to the maximum extent feasible. 42 U.S.C. § 12183 (a) (2).

42.  The Respondents altered the Property in a way that violated the ADA and that made it not easily accessible to the public with physical disabilities, including the Petitioner.

[CERTIFIED TRANSLATION]
Case 3:21-cv-01224-SCC   Document 1-1   Filed 05/13/21   Page 18 of 29
CG2021CV00863 04/12/2021 12:57:01 pm Entry No. 1 Page 18 of 28

## POLICIES AND PROCEUDRES

43.  The ADA also requires making reasonable modifications in policies, practices, or procedures, when necessary to provide equal access to the services, goods, privileges, or accommodations to persons with disabilities, unless the entity is able to demonstrate that making said modifications would fundamentally alter the nature thereof. 42 USC § 12182 (b) (2) (A) (ii).

44.  In this regard, the Respondents violated the ADA by failing to make reasonable modifications to its policies, practices, or procedures at the Property, when said modifications are necessary (without fundamentally altering the nature of the place of public accommodation) to allow for equal access to their goods, services, facilities, or accommodations.

45.  The Petitioner seeks any remedy available under the ADA (that is, permanent injunction, attorney's fees, costs, and legal expenses) for the referenced violations. 42 USC § 12205.

46.  The Respondent [sic] alleges that the failure to eliminate barriers has been conscious, voluntary, and intentional because:

i    The barriers described herein are clearly visible and tend to be obvious, even to a casual observer;

ii.   The Respondents have never acknowledged that complying with the ADA is not a one-time effort, but rather a *continuous* obligation. They have refused to eliminate barriers or create alternatives to provide access;

iii.  The Petitioner [sic] is the owner, lessor, lessee, and/or operator of the Property, and, as such, has control over the conditions of same on a day-to-day basis. The Respondents have had the financial means and capacity to carry out the necessary remediation of the accessibility barriers, but have never been interested in doing so.

[CERTIFIED TRANSLATION]
Case 3:21-cv-01224-SCC   Document 1-1   Filed 05/13/21   Page 19 of 29
CG2021CV00863 04/12/2021 12:57:01 pm Entry No. 1 Page 19 of 28

iv.  Places of public accommodation must be accessible. There is a consequence if they are not: they can face a civil suit, whether initiated by the federal or state government, or by an individual. The Petitioner [sic] decided to not be proactive and not provide access on its own accord. The Respondents assumed an attitude that can be described as "let us wait, let us not do anything, we'll deal with it if anything happens". The ADA was signed into law on July 26, 1990, by then-President George H.W. Bush, after obtaining bipartisan approval. The Respondents have no excuse for evading their legal obligations, and ignorance of the law does not exempt from its consequences and compliance.

v.  The Respondents ignore the experiences of persons with disabilities who are not able to shop, make personal commercial transactions, visit the doctor, or enjoy themselves as the majority of the people do.  There are many places throughout Puerto Rico, such as the Respondents' Property, where the reasonable requirements of the ADA have been ignored. The ADA has the ability to make the difference between daily participation and daily exclusion.

vi.  The Respondents also ignore their own experiences in other places of public accommodation. In other words, the Respondents have seen that other places have accessible parking spaces, accessible restrooms, accessible counters, and many other elements that comply [with the standards], therefore they were and are aware of which are the types of access that should be provided to persons with disabilities.

vii.  The Respondents know that state and municipal permits are not the equivalent of compliance with the applicable accessibility laws. The

[CERTIFIED TRANSLATION]
Case 3:21-cv-01224-SCC   Document 1-1   Filed 05/13/21   Page 20 of 29
CG2021CV00863 04/12/2021 12:57:01 pm Entry No. 1 Page 20 of 28

Petitioner believes, and therefore alleges, that some of the municipal and state permits that the Respondents possess in order to operate their places of public accommodation expressly state that the permit to operate the business is not equivalent to a certification of compliance with the ADA.

viii. The Petitioner believes, and therefore alleges, that there are certifications by architects, engineers, contractors, managers, and government employees certifying to the contrary (potentially fraudulently, subject to investigation and discovery) that the property complied with the ADA standards, in order to design, build, alter, or operate the Property in controversy in violation of the federal standards and regulations. The Respondents cannot rely on improper acts carried out by themselves or by third parties to justify the continuous operation of a place of public accommodation that violates the applicable federal standards and regulations.

ix. The Respondents [sic] are not required to give written notice about the lack of accessibility. No other civil rights law allows businesses and places of public accommodation to discriminate without consequences until the victims of the discrimination notify the business that the law has been broken. If it were a requirement to give "notice" to the person who violates civil rights, the places of public accommodation would not be proactive in eliminating their architectural barriers. Instead, many would assume an attitude of "better to wait and deal with it if someone says and proves that they notified me about what is obviously wrong". The ADA does not place the burden of action on the persons with disabilities that the law seeks to protect; the duty to be proactive rests with the place of public accommodation. If it were a requirement

[CERTIFIED TRANSLATION]
Case 3:21-cv-01224-SCC   Document 1-1   Filed 05/13/21   Page 21 of 29
CG2021CV00863 04/12/2021 12:57:01 pm Entry No. 1 Page 21 of 28

to notify the establishment, the cost of notifying and proving that notice was given would fall on the person with disabilities, who usually already has limited financial means. For example, a written notice by a layperson would probably result in an extensive litigation and controversy of facts regarding whether said notice was actually served on a person with authority (as if it were a summons), whether it was mailed to the correct address (in a context in which many businesses operate informally and without mailing addresses), or controversies regarding whether the document was actually sent (forcing the disabled person to assume the cost of mailing letters by certified mail) or interminable controversies regarding whether the notice was sufficient, specific, or complete. Persons with disabilities encounter multiple barriers every day or refrain from going places because they know that they are not accessible (contrary to a person who does not suffer traffic accidents every day); therefore, persons with disabilities, if they were required to provide "notice", would have to invest a lot of money in sending letters by certified mail or hand-delivering said notices to persons with authority. Requiring notices would prevent the court from concentrating on the substance of the federal mandate—accessibility— and would place procedural obstacles on the exercising of rights.

x.  Establishing and managing a business requires compliance with many laws and standards. That is the cost of doing business. Those who decide to operate a place of public accommodation must comply with the applicable laws from the very first day. Anyone who decides to operate a place of public accommodation that from day one excludes or

[CERTIFIED TRANSLATION]
Case 3:21-cv-01224-SCC    Document 1-1    Filed 05/13/21    Page 22 of 29
CG2021CV00863 04/12/2021 12:57:01 pm Entry No. 1 Page 22 of 28

limits access to persons with disabilities acts on their own accord. It is unthinkable that anyone would seek to delay (by requiring "notices") or eliminate consequences for small or large enterprises that fail to pay taxes or that do not comply with the health and safety codes. Violating the rights of persons with disabilities must not be treated any differently.  It is also unacceptable that "large" companies be required to comply while medium-size or small companies are not required to do so (or vice-versa), or that compliance be required depending on the place of incorporation of the company or on the national origin or race of the owners or shareholders of the company or business.

xi.   There are great federal initiatives to educate business owners about their obligations under the ADA, including the detailed website of the U.S. Department of Justice on ADA compliance (ada.gov), the direct line of the Department of Justice, extensive technical assistance materials provided by the Department of Justice, and the ten regional ADA centers financed by the federal government that provide in-depth resources and training in every state (adata.org). However, the Respondents have made no significant or proactive effort to comply with the ADA.

xii.  Based on their failure to comply, the Petitioner believes that the Respondents have never acknowledged that the ADA accessibility standards are extremely important. Said standards are not minor details or demanding rules; instead, they are essential to guaranteeing true accessibility. A door that is too narrow can make the difference between entering or not entering a business. A restroom with too little space can make the difference between using or not using the restroom. This being

[CERTIFIED TRANSLATION]
Case 3:21-cv-01224-SCC   Document 1-1   Filed 05/13/21   Page 23 of 29
CG2021CV00863 04/12/2021 12:57:01 pm Entry No. 1 Page 23 of 28

said, it is important to point out that in order to impose liability under the ADA, the barrier does not need to fully exclude the Petitioner from entering or using the facility; it need only *interfere* with the Petitioner's full and equal enjoyment of same.  The ADAAG sets forth technical standards required for "full and equal enjoyment". Therefore, if a barrier violates the ADAAG and said barrier is related to the Petitioner's disability, the Petitioner's equal and full access is affected, which constitutes discrimination under the ADA.

xiii.  We know that persons with disabilities experience a loss of dignity, independence, personality, and pride associated with segregation and the lack of access to public accommodations. Beyond the Price Tag: An Economic Analysis of Title III of the Americans with Disabilities Act, 20 Kan. J. L. & Pub. Pol'y 58, 76, 85 (Fall 2010). Accessibility barriers and segregation create social stigma and erode the self-esteem and independence of persons with disabilities. Stacey Menzel Baker, Jonna Holland and Carol Kaufman-Scarborough, How Consumers with Disabilities Perceive "Welcome" in Retail Servicescapes: A Critical Incident Study, 23 J. of Serv. Marketing 160, 167-168 (2007). Barriers also cause persons with disabilities to have an overall negative reaction to any retail environment, and to experience fear and discomfort in said environment. Carol Kaufman-Scarborough, Reasonable Access for Mobility-Disabled Persons is More Than Widening the Door, 75 J. of 479-483-494(1999). See also, The Routledge Handbook of Designing Public Spaces for Young People: Processes, Practices and Policies for Youth Inclusion (2020) (discussing the concept of access to a substantially similar experience, beyond physical access, from a

[CERTIFIED TRANSLATION]
Case 3:21-cv-01224-SCC   Document 1-1   Filed 05/13/21   Page 24 of 29
CG2021CV00863 04/12/2021 12:57:01 pm Entry No. 1 Page 24 of 28

scientific perspective); Moreno Llopis, Beatriz. <u>La arquitectura al servicio de la discapacidad funcional</u>. Diss. 2020; Cruz, Vanessa Vianna, et al. "Accessibility barriers for people with disabilities or reduced mobility: an integrative review." Research, Society and Development 9.4 (2020): 168943053; Carol Kaufman- Scarborough and Stacey Menzel Baker, <u>Do People with Disabilities Believe the ADA Has Served Their Consumer Interests?</u>, 39 J. of Consumer Aff. 1, 24 (Summer 2005); Baker, Stacey Menzel, Jonna Holland, and Carol Kaufman-Scarborough. <u>How Consumers with Disabilities Perceive "Welcome" in Retail Servicescapes: A Critical Incident Study.</u> Journal of Services Marketing (2007); Realm, Public. <u>Experiential Accessibility</u>. Inaccessibility in the web is also one of the great modern challenges. Cohen, Alex H., Jorge E. Fresneda, and Rolph E. Anderson. <u>What Retailers Need To Understand About Website Inaccessibility And Disabled Consumers: Challenges And Opportunities</u>. Journal of Consumer Affairs.

xiv. The Petitioner vehemently rejects arguments stating that enforcing the ADA privately is not valid. The law must be observed regardless of whether the place of public accommodation is a small, medium or large entity. The ADA does not allow discriminating against some but not others. The prohibition of discrimination is absolute and applies equally to everyone. No distinction is made on the basis of the social or national origin, citizenship, or legal residence of the person who operates a place of public accommodation, whether it be a natural person or a legal entity. Complying with the physical accessibility standards of the ADA requires that business owners take proactive measures and, often, incur

[CERTIFIED TRANSLATION]
Case 3:21-cv-01224-SCC   Document 1-1   Filed 05/13/21   Page 25 of 29
CG2021CV00863 04/12/2021 12:57:01 pm Entry No. 1 Page 25 of 28

costs. Unfortunately, in this case, neither the law nor the possibility of being faced with a civil action (by the government or by a private party) was incentive enough to stimulate voluntary compliance. The ADA was not enough to compel the Respondents to comply with the law and the objective of this Petition is to ensure compliance with what is mandated by law.

**SECOND CAUSE OF ACTION**
**REHABILITATION ACT OF 1973**
(Section 504, 29 U.S.C. § 701 et seq.)

9.  The preceding paragraphs are incorporated herein by reference.

10. Section 504 provides that: "No otherwise qualified individual with a disability in the United States … shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance…" 29 U.S.C. § 794(a).

11. The Petitioner is protected by Section 504 inasmuch as he is a person with a disability.

12. The Petitioner is eligible to receive the benefits and services that are made available to the public at the Property.

13. The Respondents and the Property operated a program or activity that is covered by the Rehabilitation Act and also received federal funding as part of their programs and activities.

14. The Respondents' behavior described in this allegation violated the Petitioner's rights under the Rehabilitation Act by excluding the Petitioner or denying him benefits only because of his disability.

15. The Respondents' behavior reveals a deliberate indifference towards the rights of the Petitioner, inasmuch as the Respondents were aware or should

[CERTIFIED TRANSLATION]
Case 3:21-cv-01224-SCC  Document 1-1  Filed 05/13/21  Page 26 of 29
CG2021CV00863 04/12/2021 12:57:01 pm Entry No. 1 Page 26 of 28

have been aware of their legal obligations under the federal legislation, yet they consciously ignored said obligations.

16. The Petitioner suffered emotional anguish and damages as a result of the Defendants' violation of the Rehabilitation Act.

17. Pursuant to Section 505 of the Rehabilitation Act, the Plaintiff is entitled to compensation for damages, costs, litigation expenses, and attorney's fees.

18. In accordance with the ruling of the United States Supreme Court in *Uzuegbunam v. Preczewski*, 592 U.S.____(2021), 2021 WL 850106 (March 8, 2021),[3] we request nominal damages. In *Uzuegbunam*, a student was banned from preaching at the University of Georgia campus when he was a student. In an 8-1 decision in *Uzuegbunam*, the United States Supreme Court concluded that Chike Uzuegbunam could claim nominal damage from Georgia Gwinnett College, even when the university changed its discriminatory policy in response to the civil action brought by him. Judge Clarence Thomas penned the majority opinion and Justices Samuel Alito, Stephen Breyer, Amy Coney Barret, Neil Gorsuch, Elena Kagan, Brett Kavanaugh, and Sonia Sotomayor also joined in the majority opinion that put an end to the practice of "tactical mootness" in the context of federal causes of action. Said practice consists of alleging that a violation of rights has become moot in order to then move for the dismissal of the entire suit. Although a claim for injunctive relief can become moot if all of the requirements of the doctrine and is exceptions are met, the claim can still remain alive through a claim for nominal damages. Nominal damages represent a concrete victory for the claimant and also serve as the basis to determine who is the prevailing party in the civil proceeding. In this case, nominal damages are requested under (i) the ADA and (ii) the Rehabilitation Act.

---

[3] See https://www.supremecourt.gov/opinions/20pdf/19-968_8nj9.pdf

[CERTIFIED TRANSLATION]
Case 3:21-cv-01224-SCC   Document 1-1   Filed 05/13/21   Page 27 of 29
CG2021CV00863 04/12/2021 12:57:01 pm Entry No. 1 Page 27 of 28

## REMEDIES

**WHEREFORE**, the Petitioner very respectfully requests the following legal remedies:

A. A declaratory judgment providing that the Respondents have breached the requirements of Title III of the ADA and the corresponding implementation regulations of the ADA; and that the Property is not fully accessible and able to be used independently by persons with limited mobility, such as the Petitioner.

B. A permanent injunction in accordance with 42 USC § 12188 (a) (2) and 28 CFR § 36.504 (a) ordering the Respondents to take all the steps necessary to eliminate the architectural barriers described in paragraph 17, as well as any other barrier that is subsequently discovered related to the limitations of the Petitioner, and so that their facilities comply with the requirements established in the ADA and its implementation regulations, so that their facilities are fully accessible to, and may be independently accessed by, persons with limited mobility.

C. A permanent injunction pursuant to 42 USC § 12188 (a) (2) y 28 CFR § 36.504 (a) ordering the Respondents to modify their policies, procedures, uses, and customs described in paragraph 18, to avoid discrimination in the future.

D. An order stating that the court shall retain jurisdiction for a period of three years to oversee that the Respondents comply with the relevant requirements of the ADA and to make sure that the Respondents have adopted and follow an institutional policy that actually makes them remain fully in compliance with the law.

E. In the event that the Respondents continue with their discriminatory conditions, it is hereby requested in accordance with 42 USC § 12188 (a) (2)

[CERTIFIED TRANSLATION]
Case 3:21-cv-01224-SCC    Document 1-1    Filed 05/13/21    Page 28 of 29
CG2021CV00863 04/12/2021 12:57:01 pm Entry No. 1 Page 28 of 28

and 28 CFR § 36.504 that the closing and closure of the Property be ordered as a measure to stop the discriminatory conditions until the Respondents have irrefutably shown to the satisfaction of the court that the discrimination has been eliminated.

F. Payment of costs and litigation expenses, in accordance with 42 USC § 12205.

G. Payment of reasonable attorney's fees *not* under the Puerto Rico Rules of Civil Procedure, but pursuant to the provisions of 42 U.S.C. § 12205 and 28 CFR § 36,505[sic] and its binding and interpretative case authority.

H. Compensatory damages pursuant to the Rehabilitation Act.

I. Nominal damages pursuant to the Rehabilitation Act and the ADA, as established in *Uzuegbunam v. Preczewski*, 592 U.S. (2021).

J. Any other remedy that is fair and appropriate.

**RESPECTFULLY SUBMITTED.**

Today, April 12, 2021.

s/José Carlos Vélez Colón
ATTY. JOSÉ CARLOS VÉLEZ COLÓN
ATTORNEY REGISTRY NO.:  18913
JVELEZ@VELEZLAWGROUP.COM

421 AVE MUÑOZ RIVERA #205
SAN JUAN, PR 00918

1969 S ALAFAYA TRAIL #379
ORLANDO, FL 32828-8732

TEL.: (787) 599-9003
TEL: (407) 267-7130
FAX: N/A

Counsel for the Petitioner

**CERTIFICATE OF TRANSLATION**
**SPANISH TO ENGLISH**

**DOCUMENT:**   Complaint in the case of Faustino X. Betancourt Colón vs. Hospital Menonita Caguas, Inc., et als
(original Spanish document consisting of 28 pages)

The undersigned, Margot A. Acevedo Chabert, USCCI, hereby certifies that she has been actively engaged as a professional translator and interpreter (English <> Spanish) certified by the Administrative Office of the United States Courts since 2006 (Certificate No. 06-001), that she has an MA in Translation from the University of Puerto Rico, and that to the best of her knowledge and understanding, the attached document is a true and correct translation of the original text provided for translation.

In Milwaukee, WI, on May 12, 2021

**Margot A. Acevedo Chabert, USCCI**